**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

-------------------------------------------------------X
In re:                                                              :    CHAPTER 11
                                                                         :
WINDSOR MARKETING GROUP, INC.    :    CASE NO. 18-20022
-------------------------------------------------------X

**MOTION FOR INTERIM AND FINAL ORDER AUTHORIZING DEBTOR TO USE CASH COLLATERAL, GRANTING ADEQUATE PROTECTION AND AUTHORIZAING BORROWING**

Windsor Marketing Group, Inc. ("WMG" or "Debtor") as debtor and debtor-in-possession, by its motion pursuant to Bankruptcy Code section 361, 362 and 363 and Federal Rules of Bankruptcy Procedure 4001 and 9014, for an order (a) authorizing them to use cash collateral and granting adequate protection on a preliminary basis, (b) scheduling and establishing notice procedures for a final hearing on this motion, (c) after holding such final hearing, for an order authorizing them to use cash collateral and granting adequate protection on a final basis (d) authoring borrowing of $50,000 from Kevin Armata and (e) granting related relief, respectfully states:

1.      On January 8, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtor continues to operate its business and manage its properties, affairs, and assets as debtor-in-possession. No trustee, examiner, or committee has been appointed in this case.

2.      The Court has jurisdiction over this motion pursuant to 28 U.S.C. sections 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. section 157(b). Venue is proper in this Court for these cases and this motion pursuant to 28 U.S.C. sections 1408 and 1409, respectively.

The basis for the relief requested herein is Bankruptcy Code sections 105, 361, 363, 503 and 507 and Federal Rules of Bankruptcy Procedure 4001 and 9014.

3. WMG is an innovative in-store marketing company helps retailers increase sales by developing, manufacturing and distributing in-store marketing programs that captivate shoppers and inspire them to buy. The company, based in its state of the art 250,000 square foot facility in Suffield, CT, is committed to enhancing the shopping experience, increasing basket sizes, and stimulating impulse purchases.

4. Since 1976, WMG has grown to over 164 associates serving more than 3000 clients from some of the most respected retail chains in the U.S. The company is known for practicing Social Consciousness, which entails taking into account the impact of business decisions on all stakeholders and the environment.

5. WMG has been recognized multiple ways for its efforts in this area, including most recently by the Connecticut Department of Energy and Environmental Protection as a 2016 Green Circle Award recipient for Sustainability.

6. WMG is headquartered in Suffield, Connecticut. The book value of its assets and the amount of its liabilities each total approximately $15,000,000.00. WMG elected to file for relief under Chapter 11 due to the lack of liquidity caused, in main part, by the change in the retail industry.

7. By this motion, the Debtor seeks (a) the scheduling, pursuant to Federal Rule of Bankruptcy Procedure 4001, of a preliminary hearing on this motion (the "Interim Hearing") within three days of the commencement of this Chapter 11 case; (b) at the Interim Hearing, the entry of an interim order in the form attached hereto as Exhibit A (the "Interim Order") authorizing the Debtor to use cash collateral in accordance with the budget annexed hereto as Exhibit B (the

"Budget") and granting adequate protection to parties claiming an interest in the Debtor's cash collateral; (c) the scheduling, pursuant to Federal Rule of Bankruptcy Procedure 4001, of a final hearing on this motion (the "Final Hearing") within approximately twenty-one days of the commencement of these Chapter 11 cases; (d) the establishment of certain notice procedures for the Final Hearing; and (e) at the Final Hearing, the entry of a final order (the "Final Order"; together with the Interim Order, the "Cash Collateral Orders") authorizing the Debtor to use cash collateral in accordance with the Budget and granting adequate protection to parties claiming an interest in the Debtor's cash collateral, and authorizing borrowing.

8. The Debtor's major secured creditor is People's United Bank ("Lender"), as follows:

a. <u>The Operating Line</u>. Lender and Debtor are parties to that certain "Loan and Security Agreement" dated as of December, 2013, as amended from time to time (the "Revolver"). Pursuant to the Revolver, Lender made available to Debtor a revolving line of credit, subject to all terms and conditions contained in the Revolver in the original principal amount of $5,000,000 (collectively, the Loan and Security Agreement and all documents executed in connection with the Revolver, the "<u>Loan Documents</u>").

b. <u>The Prepetition Collateral</u>. In order to secure the payment and performance of the Revolve, the Debtor granted Lender a security interest in substantially all present and future personal property of the Debtor (the "<u>Prepetition Collateral</u>").

c. <u>Other obligations to Lender</u>. Separate and distinct from the Revolver, Debtor and Lender entered into three other distinct loan agreements. Kevin Armata is the sole owner and president of the Debtor and guaranteed all obligations to Lender.

9. <u>Prepetition Loan Obligations</u>. As of the Petition Date, the Debtor was indebted and liable to the Lender approximately as follows: (a) under the Revolver: $3,412,976.74 (b) under first capex loan: $190,024.13 (c) under a term loan: $642,857.28; and (d) under second capex loan $126,944.62 (referred to collectively as the "<u>Prepetition Obligations</u>")

10. The State of Connecticut Department of Economic Development and People's Capital and Leasing Corp. may assert liens in some portion of the Cash Collateral (together, the "Other Lien Holders").

11. The purpose of the use of the Debtor's Cash Collateral is to meet the Debtor's ongoing working capital and general business needs, which primarily consists of payroll, goods and supplies during the Budget period. The Debtor has determined, in the exercise of its sound business judgment, that it requires the use of its Cash Collateral and that the terms of the Cash Collateral Order will reasonably address the Debtor's requirements and constitute the best alternative under the circumstances.

12. The relief sought herein is necessary to the continued operation of the Debtor. If the Debtor is not granted the relief sought herein, including holding a hearing on a preliminary basis within three days of the Petition Date, then the Debtor will suffer irreparable harm in that it will be forced to cease operations, thereby destroying its going concern value for creditors of the estate, creating additional claims against the estate and eliminating vital jobs for its employees. The Debtor does not have any available sources of working capital and financing to carry on the operation of its business without the use of the Cash Collateral. The preservation and maintenance of the Debtor's business and its assets are necessary to maximize returns for all creditors and effectuate a plan of reorganization with respect to its remaining assets.

13. The duration of the use of cash collateral will be as provided in the Budget.

14. The Debtor is requesting that the Court grant the following pursuant and subject to sections 361, 362, 363, 503 and 507 of the Bankruptcy Code, as adequate protection for any diminution in value of the Prepetition Collateral resulting from the use of Cash Collateral, the Carve-Out (as defined below), the use, sale or lease of any other Prepetition Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code:

a. To the Lender—

(1) To the extent of any diminution in value of the Prepetition Collateral resulting from any use of Cash Collateral, the use, sale or lease of any other Prepetition Collateral, and the imposition of the automatic stay pursuant to Section 362 of the Bankruptcy Code, the Lender to be granted valid, binding, enforceable and perfected replacement liens on and security interests in (the "Adequate Protection Liens") all property and assets of any kind and nature in which the Debtor has an interest, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising and all proceeds, products, rents and profits thereof, including, without limitation, all cash, accounts, chattel paper, deposit accounts, documents, equipment, general intangibles, instruments, investment property, letters of credit rights, vehicles, goods, accounts receivable, inventory, cash-in-advance deposits, real estate, machinery, intellectual property (including trademarks and trade names), licenses, causes of action, rights to payment, including tax refund claims, insurance proceeds and tort claims, and the proceeds, products, rents and profits of all of the foregoing (all of the foregoing together with the Prepetition Collateral, the "Postpetition Collateral") to the same extent, priority and validity as Lender had at the Petition Date; provided, however, that the Postpetition Collateral shall not include any claims or causes of action arising under Chapter 5 of the Bankruptcy Code or any similar state law

("Avoidance Actions"), or any proceeds thereof. The Adequate Protection Liens to have the following priorities:

(2) First Priority On Unencumbered Property. Subject to the Carve Out, a valid, binding, continuing, enforceable, fully perfected, non-voidable first priority lien on, and security interest in, all Postpetition Collateral of the type and kind that constitutes the Lender's Prepetition Collateral, in addition to all Postpetition Collateral that is not subject to valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date, to the same extent, priority and validity as the Lender; liens had on the Petition Date.

(3) Liens Junior To Certain Existing Liens. Subject to the Carve-Out, a valid, binding, continuing, enforceable, fully perfected non-voidable junior lien on, and security interest in, all Postpetition Collateral, that is subject to valid, perfected and unavoidable senior liens in existence immediately prior to the Petition Date to the same extent, priority and validity as Lender had on the Petition Date.

(4) Superpriority Claims. To the extent of any diminution in value of the Prepetition Collateral in which the Debtor has an interest resulting from any use of Cash Collateral, the use, sale or lease of any other Prepetition Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, the Lender to be granted allowed superpriority claims senior to all other administrative expense claims and to all other claims, including administrative claims, arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, except as set forth below in the immediately succeeding section (the "Superpriority Claims"), which Superpriority Claims is to be payable from, and have recourse to, all of the Postpetition Collateral and proceeds thereof;

<u>provided</u>, <u>however</u>, that such Superpriority Claims are to be subject to the Carve-Out (as defined below).

(5)  The Adequate Protection Liens and Superpriority Claims to be effective as of the date of the entry of the Interim Order without any further action by the Debtor or the Lender and without the necessity of the execution, filing or recordation of any financing statements, security agreements, lien applications or other documents.

(6)  All of the Lender' Cash Collateral to be deposited and maintained at all times in accounts in the name of the Debtor at People's United Bank, and not commingled with any funds which do not constitute the Lender's Cash Collateral.

(7)  Debtor will also provide to Lender: (i) a weekly report showing comparison of Debtors's actual collections and disbursements, as measured against Debtor's projected collections and disbursements in the Budget, as measured on a weekly basis; (ii) a weekly accounts receivable aging and accounts payable aging; and (iii) a weekly report showing all deposits, disbursements and other activity in the Deposit Accounts. The Debtor will also to cooperate with all reasonable audit and appraisal requests of the Lender and its representatives and agents.

15.  <u>Carve Out.</u>  Notwithstanding any provision of the Loan Documents or this Interim Order, the Prepetition Liens, Adequate Protection Liens and Superpriority Claim (each as defined herein) shall be subject and subordinate in all respects to a carve-out for the following costs, fees and expenses (collectively, the "<u>Carve-Out</u>"): (i) the unpaid fees due and payable to the Clerk of the Court and the Office of the United States Trustee pursuant to 28 U.S.C. § 1930; and (ii) the unpaid fees, costs and expenses incurred by professionals retained by the Debtor and an Official Committee of Unsecured Creditors, if any, provided, however the Carve-Out may not be used for any services (i) contesting the validity, priority or extent of the prepetition or postpetition claims

or liens asserted by Lender, (ii) asserting claims or causes of action of any sort whatsoever (including, without limitation, avoidance claims) against Lender or any person or entity affiliated with Lender, or (iii) seeking to modify any of the rights of Lender provided for in this Interim Order.

    a.    <u>To the Other Lien Holders</u>. To the extent that any of the Other Lien Holders hold an interest in the Cash Collateral, as adequate protection for the Debtor's use of Cash Collateral pursuant to this Interim Order, each such Other Lien Holder to be granted (a) a replacement lien on all of the Prepetition Collateral and the Postpetition Collateral and (b) a Superpriority Claim; provided, however, that such replacement liens and Superpriority Claims are to be only for the amount of any diminution in value (if any) of such Other Lien Holder's interest (if any) in the Cash Collateral and that such replacement liens or Superpriority Claim are to be only to the same validity, priority and extent of any pre-petition interest in the Cash Collateral held by such Other Lien Holder. The Other Lien Holders shall not be required to file any financing statements, mortgages, notices of lien or similar instruments in any jurisdiction or filing office, or to take any other action in order to validate or perfect the replacement liens granted herein. The Debtor believes that the foregoing will adequately protect the Other Lien Holders interests in the Cash Collateral.

    16.    <u>Events of Default; Remedies</u>. The Cash Collateral Order provides that the occurrence of any of the following shall constitute an event of default (each, an "<u>Event of Default</u>"):

    a. An order of this Court shall be entered dismissing the Chapter 11 Case, converting the Chapter 11 Case to one under Chapter 7 of the Bankruptcy Code or appointing a Chapter 11 trustee in the Chapter 11 Case or appointing an examiner with expanded powers;

b. An order of this Court shall be entered granting relief from the automatic stay under section 362 of the Bankruptcy Code that would permit a party in interest other than the Lender to immediately exercise any rights or remedies or consummate a foreclosure or foreclosures upon any material portion of the Prepetition Collateral or Postpetition Collateral;

c. An order of this Court or any other court having jurisdiction to do so shall be entered amending, supplementing, staying, vacating, reversing, revoking, rescinding or otherwise modifying any material provision of this Interim Order without the express written consent of the Lender;

d. An order of this Court or any other court having jurisdiction to do so shall be entered that approves any claims for recovery of amounts under section 506(c) of the Bankruptcy Code or otherwise arising from the preservation or disposition of any Prepetition Collateral or Postpetition Collateral, provided that payments and deposits made in accordance with the Budget shall not result in the occurrence of an Event of Default hereunder;

e. The Final Cash Collateral Order shall not have been entered, be in full force and effect and not subject to any stay, on or before the thirtieth (30th) day following the date of entry of the Interim Order, or the Final Order shall cease to be in full force and effect and unstayed. Upon the occurrence of an Event of Default and five (5) business Days written notice to Debtor and Debtor's counsel thereof, the Debtor's consensual rights to use Cash Collateral pursuant to the Budget shall terminate <u>provided</u>, <u>however</u>, any rights of the Debtor to seek the non-consensual use of Cash Collateral will be reserved; that termination of the use of the Prepetition Collateral, including Cash Collateral, pursuant to the Budget, shall not impair the continuing effectiveness and enforceability of any other provisions in the Cash Collateral Order; and

f. The Debtor uses Cash Collateral for purposes outside the Budget.

17. <u>Limitation on Charging Expenses Against Collateral</u>. No expenses of administration (whether incurred during the Chapter 11 Case or any subsequent case) incurred for the preservation or protection of the Prepetition Collateral or the Postpetition Collateral incurred while the Debtor is authorized to use such collateral under the Final Order shall be charged against or recovered from of the Prepetition Collateral or the Postpetition Collateral pursuant to Bankruptcy Code section 506(c) or any similar principal of law or equity without the express prior written consent of the Lender.

18. <u>Binding Effect</u>. The Cash Collateral Orders provide that the stipulations contained therein shall be binding upon the Debtor, and its respective successors and assigns (including any Chapter 7 or Chapter 11 trustee hereinafter appointed or elected for the estate of the Debtor); that the stipulations, releases and admissions contained in the Cash Collateral Order shall be binding upon all other parties-in-interest, including any committee, unless any committee or any other party-in-interest (other than the Debtor), duly commences an adversary proceeding no later than (i) ninety (90) days following the date on which such committee is first appointed or (ii) if no committee is appointed within thirty days of the Petition Date, then ninety (90) days following the Petition Date (collectively, (i) and (ii) shall be referred to as the "<u>Investigation Period</u>"), (x) challenging the validity, enforceability, priority, perfection, characterization or amount of the Debtor's Prepetition Obligations or the Prepetition Liens or (y) asserting any claims or causes of action against Lender. If no such adversary proceeding is duly commenced during the Investigation Period, (i) the claims of the Lender and Lender arising from the Debtor's Prepetition Obligations and the Prepetition Liens shall constitute allowed claims against the Debtor and shall not be subject to any contest, objection, recoupment, counterclaim, defense, offset, subordination, recharacterization, avoidance, or other claim, challenge, or cause of action under the Bankruptcy

Code, applicable non-bankruptcy law, or otherwise and the Prepetition Liens shall be deemed legal, valid, binding, enforceable, duly perfected, not subject to any objection, counterclaim, setoff, offset of any kind, subordination, or defense, and such liens are otherwise unavoidable; and (ii) the Lender and Lender shall not be subject to any other or further claims, counterclaims, causes of action or lawsuits by any representative of the estate with respect to acts or omissions occurring prior to the Petition Date.

19. The Debtor requests that the Court conduct a preliminary hearing on this Motion within three days of the Petition Date and that the Court enter the Interim Order at that hearing.

20. By this Motion, WMG also seeks authority to borrow $50,000 from Kevin Armata on an administrative claim basis (the "Loan"). The Loan will bear interest at 2% and become due on the earlier of confirmation of a plan of reorganization, dismissal of the case, conversion of the case to a case under chapter 7 or the appointment of a trustee. The advance of the $50,000 reflects an agreement with the Lender prior to the filing, will provide the Debtor with extra liquidity in the event of an emergency, and provides additional adequate protection.

21. <u>Notice of Final Hearing; Objections</u>. The Debtor proposes the following notice procedure for the Final Hearing: on or before _____, the Debtor shall transmit copies of a notice of the entry of the Interim Order, together with a copy of the proposed Final Order, to the parties having been given notice of the Interim Hearing, to any party which has filed prior to such date a request for notices with this Court and to counsel for the Committee, once appointed. The notice of entry of the Interim Order shall state that any party in interest objecting to the use of cash collateral Postpetition Financing on a final basis and the entry of the Final Order shall file written objections with the Clerk of the United States Bankruptcy Court for the District of Connecticut no later than 4:00 p.m. (prevailing Eastern Time) on January , 2018 and shall serve

11

such objections so that the same are received on or before such date by: (a) Zeisler & Zeisler, P.C., 10 Middle Street, 15th Floor, Bridgeport, CT 06604 Attn: James Berman, Esq., counsel for the Debtor; (b) Scott Rosen, Esq., Cohn Birnbaum & Shea, PC, 100 Pearl Street, #12, Hartford, CT 06103, counsel for the Lender; and (c) the Office of the US Trustee.

22. Additionally, this Motion requests a final hearing for the authority to use Cash Collateral and To Borrow on or before _____.

WHEREFORE, the Debtor respectively requests that this Court enter an Order granting i) the preliminary and final relief sought herein and ii) such further relief as this Court deems just and proper.

Respectfully submitted this 9th day of January, 2018, at Bridgeport, Connecticut.

THE DEBTOR,

WINDSOR MARKETING GROUP, INC.

By: */s/ James Berman*
James Berman, Esq. (ct06027)
Eric Henzy (ct12849)
Zeisler & Zeisler, P.C.
10 Middle Street, 15th floor
Bridgeport, CT  06604
Telephone: 203-368-4234
Email:  jberman@zeislaw.com
ehenzy@zeislaw.com