**HIS IS NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DRAFT PLAN HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

```
-------------------------------------------------- X
In re:                                  :          CHAPTER 11
                                        :
WINDSOR MARKETING GROUP, INC. :         CASE NO. 18-20022 (JJT)
-------------------------------------------------- X
```

**DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION**

Dated: February 25, 2019

ZEISLER & ZEISLER, P.C.
James Berman
Matthew K. Beatman (ct08923)
10 Middle Street, 15th Floor
Bridgeport, CT 06604
Tel: (203) 368-4234
mbeatman@zeislaw.com
Counsel for the Debtor and Debtor in Possession

## DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

Windsor Marketing Group, Inc. (the "Debtor"), as debtor and debtor in possession, propose this chapter 11 plan of reorganization (the "Plan") for, among other things, the resolution of the outstanding Claims against, and Equity Interests in, the Debtor. Unless otherwise noted, capitalized terms used in this Plan have the meanings set forth in ARTICLE I.A of the Plan. The Debtor is the proponent of this Plan within the meaning of § 1129 of the Bankruptcy Code. Reference is made to the Disclosure Statement (as such term is defined herein and distributed contemporaneously herewith) for a discussion of, among other things, the Debtor's history and businesses leading up to the commencement of the Chapter 11 Case and for a summary and analysis of this Plan and the treatment of Claims provided for herein. The Plan provides for the reorganization of the Debtor.

ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

*A.    Defined Terms*

As used in the Plan, the following terms shall have the following meanings when used in capitalized form (and their plural or singular forms shall have correlative meanings). Any term used in the Plan that is not defined in this Article I, but is defined in the Bankruptcy Code, the Bankruptcy Rules or the Disclosure Statement shall have the meaning ascribed to such terms in the Bankruptcy Code, the Bankruptcy Rules or the Disclosure Statement, as the case may be.

1.    "Administrative Creditor" means any Creditor entitled to payment of an Administrative Claim.

2.    "Administrative Claim" means any Claim for costs and expenses of administration of the Chapter 11 Case that is Allowed pursuant to Bankruptcy Code § 503(b), including, without limitation, (a) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Estate and operating the businesses of the Debtor; (b) Professional Fees; and (c) all fees and charges assessed against the Estate pursuant 28 U.S.C. § 1930.

3.    "Administrative Claims Bar Date" means the Business Day which is thirty (30) days after the Confirmation Date or such other date as approved by order of the Bankruptcy Court.

4.    "Affiliate" means an "affiliate" as defined in § 101(2) of the Bankruptcy Code.

5.    "Allowed" (this term is used both separately and in conjunction with other defined terms in the Plan (*e.g.*, Allowed Priority Tax Claim)) means, except as otherwise provided herein,

(a) a Claim or Equity Interest specifically allowed under the terms of the Plan, (b) a Claim or Equity Interest that has been allowed by a Final Order or in a stipulation of amount and nature of the Claim or Equity Interest executed by the Reorganized Debtor on, or after, the Effective Date, (c) an Equity Interest or Claim as reflected by a Proof of Claim, timely Filed or deemed timely Filed, or (d) if the Proof of Claim has not been timely Filed or deemed timely Filed, the Claim as reflected in the Schedules if therein listed as undisputed, unliquidated and not contingent or the Equity Interest as reflected in the Schedules; provided that in the case of allowance under either subsections (c) or (d), any Claim's allowance is subject to any limitations imposed by § 502 of the Bankruptcy Code; and provided further that allowance under subsections (c) and (d) only is applicable if the Claim or Equity Interest is not timely Disputed; and provided also that allowance under subsections (c) and (d) only apply once either (1) the Debtor or the Reorganized Debtor have determined not to object to the Claim, or (2) the last day to timely object to such Claim has passed.

6.     "Avoidance Actions" means any and all actual or potential avoidance, recovery, subordination or other claims, actions or remedies that may be brought by and on behalf of the Debtor or its Estate under Chapter 5 of the Bankruptcy Code or applicable non-bankruptcy law.

7.     "Bankruptcy Code" means Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time and as applicable to the Chapter 11 Case.

8.     "Bankruptcy Court" means the United States Bankruptcy Court for the District of Connecticut, Hartford Division.

9.     "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, in each case as amended from time to time and as applicable to the Chapter 11 Case.

10.     "Bar Date" means the deadline set by order of the Bankruptcy Court for Filing Proofs of Claim in the Chapter 11 Case.

11.     "Business Day" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

12.     "Case" means the Debtor's voluntary case under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Bankruptcy Court, under chapter 11 of the Bankruptcy Code, and styled *In re Windsor Marketing Group, Inc.*, Case No. 18-20022.

13.     "Cash" means the legal tender of the United States of America or the equivalent thereof.

14.     "Cause of Action" means any action, proceeding, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, debt, damage, judgment, account, defense, remedy, offset, power, privilege, license and franchise of any kind or character whatsoever, in each case whether known, unknown, contingent or non-contingent, reduced to judgment or not reduced to judgment, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other

theory of law.  For the avoidance of doubt, Cause of Action includes: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Equity Interests; (c) any claim pursuant to § 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury, and any other defenses set forth in § 558 of the Bankruptcy Code; and (e) any claims under any state or foreign law, including, without limitation, any fraudulent transfer or similar claims.

15.     "Claim" means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, contested, disputed, undisputed, legal, equitable, secured or unsecured, or any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

16.     "Claims Register" means the official register of Claims as maintained by the clerk of the Bankruptcy Court.

17.     "Class" means a category of holders of Claims or Equity Interests as set forth in ARTICLE III hereof pursuant to §§ 1122(a) and 1123(a) of the Bankruptcy Code.

18.     "Collateral" means any property or interest in property of any Debtor's Estate that is subject to a valid and enforceable Lien to secure a Claim.

19.     "Committee" means the official committee of unsecured creditors in the Chapter 11 Case appointed on in the Case, pursuant to § 1102 of the Bankruptcy Code.

20.     "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

21.     "Confirmation Hearing" means the hearing held by the Bankruptcy Court pursuant to § 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

22.     "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to § 1129 of the Bankruptcy Code.

23.     "Consummation" means the occurrence of the Effective Date.

24.     "Creditor" means any holder of a Claim against any Debtor(s).

25.     "Cure" means the payment or other honor of all obligations required to be paid or honored in connection with assumption of an executory contract or unexpired lease pursuant to § 365 of the Bankruptcy Code, including, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law:  (a) the cure of any non-monetary defaults to the extent required, if at all, pursuant to § 365 of the Bankruptcy Code, and (b) with respect to monetary defaults, the distribution within a reasonable period of time following the Effective Date of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy

Court, with respect to the assumption (or assumption and assignment) of an executory contract or unexpired lease, pursuant to § 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations or such lesser amount as may be agreed upon by the parties, under such executory contract or unexpired lease.

26.     "<u>Debtor</u>" means, Windsor Marketing Group, Inc.

27.     "<u>Disclosure Statement</u>" means that certain Disclosure Statement for Debtor's Chapter 11 Plan of Reorganization, as amended, supplemented, or modified from time to time, which describes this Plan, including all exhibits and schedules thereto and references therein that relate to this Plan.

28.     "<u>Disputed</u>" means, with respect to a Claim, Equity Interest or any portion thereof that is not specifically Allowed under the Plan, that such Claim, Equity Interest or portion thereof: (a) is the subject of an objection or request for estimation filed by any of the Debtor or any other party in interest in accordance with applicable law, which objection has not been withdrawn, resolved, or overruled by a Final Order of the Bankruptcy Court; (b) has not been otherwise Allowed and is scheduled by the Debtor as contingent, unliquidated, or disputed; or (c) is otherwise disputed by any of the Debtor or any other party in interest in accordance with applicable law, which dispute has not been withdrawn, resolved, or overruled by a Final Order.

29.     "<u>Effective Date</u>" means the first Business Day after the Confirmation Order becomes a Final Order.

30.     "<u>Entity</u>" means and includes person, estate, trust, governmental unit, and United States trustee.

31.     "<u>Equity Interest</u>" means any equity security (as defined in Bankruptcy Code § 101(16)) in any Debtor, including, without limitation, all issued, unissued, authorized or outstanding shares of stock or limited company interests, together with (i) any options, warrants or contractual rights to purchase or acquire any such Equity Securities at any time with respect to such Debtor, and all rights arising with respect thereto and (ii) the rights of any Entity to purchase or demand the issuance of any of the foregoing and shall include: (1) conversion, exchange, voting, participation, and dividend rights; (2) liquidation preferences; (3) options, warrants, and put rights; and (4) stock-appreciation rights.  The term "Equity Interest" also includes any Claim that is determined to be subordinated to the status of an Equity Security by Final Order of the Bankruptcy Court, whether under general principles of equitable subordination, § 510(b) of the Bankruptcy Code, or otherwise.

32.     "<u>Estate</u>" means the bankruptcy Estate of the Debtor created by virtue of § 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

33.     "<u>Exculpated Parties</u>" mean the Debtor and its current and former directors, officers, shareholders, attorneys and accountants, the Committee and its members (solely in their representative capacity) and the Committee's attorneys.

34.     "<u>Executory Contract</u>" means a contract to which any Debtor is a party that is subject to assumption or rejection under §§ 365 or 1123 of the Bankruptcy Code.

35.     "File" or "Filed" or "Filing" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

36.     "Final Order" means an order or judgment of the Bankruptcy Court, the operation or effect of which has not been reversed, stayed, modified or amended and which is in full force and effect, and as to which the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, new trial, reargument, or rehearing shall have been waived in writing, or, in the event that an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined to be in effect by the highest court to which such order was appealed, or certiorari, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order; provided, further, that the Debtor or the Reorganized Debtor, as applicable, reserve the right to waive any appeal period for an order or judgment to become a Final Order.

37.     "Governmental Unit" means a "governmental unit" as defined in § 101(27) of the Bankruptcy Code.

38.     "Lien" means a charge against or interest in property to secure payment of a debt or performance of an obligation.

39.     "Local Rules" means the Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court for the District of Connecticut.

40.     "Non-Tax Priority Claim" means any Claim accorded priority in right of payment under § 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

41.     "Person" means a "person" as defined in § 101(41) of the Bankruptcy Code and also includes any limited liability company, firm, trust, association or other Entity, whether acting in an individual, fiduciary or other capacity.

42.     "Petition Date" means January 8, 2018, the date on which the Debtor commenced the Chapter 11 Case.

43.     "Plan" means the Debtor's Chapter 11 Plan of Reorganization, including all exhibits, schedules, supplements, and appendices thereto, either in its present form or as the same may be altered, amended, modified or otherwise supplemented from time to time in accordance with the terms herein.

44.     "Priority Tax Claim" means any Claim of a Governmental Unit of the kind specified in § 507(a)(8) of the Bankruptcy Code.

45.    "Pro Rata" means, proportionately, so that the ratio of (i) (1) the amount of property to be waived or distributed on account of such Claim to (2) the amount of such Claim, is the same as the ratio of (ii) (1) the amount of property to be waived or distributed on account of all Claims of the Class, Classes or group sharing in such waiver, distribution or otherwise to (2) the amount of all Claims in such Class, Classes or group.

46.    "Professional" means any Entity employed in the Chapter 11 Case pursuant to §§ 327 or 1103 of the Bankruptcy Code or otherwise.

47.    "Professional Fees" means an Allowed Claim under §§ 328, 330(a) or 331 of the Bankruptcy Code.

48.    "Proof of Claim" means a proof of Claim or Equity Interest Filed against the Debtor in the Chapter 11 Case.

49.    "Related Persons" means, with respect to any Entity, such Entity's predecessors, successors, assigns, managed accounts or funds, and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and each of its respective current and former officers, directors, principals, employees, shareholders, members (including *ex officio* members), partners, agents, managers, managing members, advisory board members, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, management companies, fund advisors, and other professionals, and any Person claiming by or through any of them, in each case acting in such capacity as such relates to the Debtor or the Reorganized Debtor and not as it relates to any other matter.

50.    "Reorganized Debtor" means the Debtor, as reorganized pursuant to this Plan on or after the Effective Date.

51.    "Schedules" means the schedules of Assets and liabilities, statements of financial affairs, lists of holders of Claims and Equity Interests and all amendments or supplements thereto, including any global notes, statement of Limitations, methodology and disclaimers incorporated by reference therein, Filed by the Debtor with the Bankruptcy Court (as may be amended, modified or supplemented from time to time) to the extent such Filing is not waived pursuant to an order of the Bankruptcy Court.

52.    "Secured Claim" means a Claim that is secured by a Lien on property in which any Debtor's Estate has an interest or that is subject to a valid right of setoff under § 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to § 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to § 553 of the Bankruptcy Code.

53.    "Stamp or Similar Tax" means any stamp tax, document recording tax, personal property tax, conveyance fee, intangibles or similar tax, mortgage tax, mortgage recording tax, real estate transfer tax, sales tax, use tax, Uniform Commercial Code filing or recording fee, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege taxes (including, without limitation, privilege taxes on construction contracting

with regard to speculative builders and owner builders), regulatory filing or recording fee, and other similar taxes or other assessments imposed or assessed by any Governmental Unit.

54.     "Unsecured Claim" means any prepetition Claim against any Debtor that is not a: (a) Administrative Claim; (b) Priority Tax Claim; (c) Non-Tax Priority Claim; (d) Secured Claim; or (e) Equity Interest.

### B.     Rules of Interpretation

For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) except as otherwise provided, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) except as otherwise provided, any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the terms of the Plan; (4) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan or hereto; (5) unless otherwise stated, the words "herein," "hereof," and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (6) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (7) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation;" (8) the rules of construction set forth in § 102 of the Bankruptcy Code shall apply; (9) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (10) any effectuating provisions may be interpreted by New Holdco or the Reorganized Debtor in a manner consistent with the overall purpose and intent of the Plan, all without further notice to or action, order, or approval of the court or any other entity, and such interpretation shall control in all respects; (11) except as otherwise provided, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; and (12) any docket number references in the Plan shall refer to the docket number of any document Filed with the Court in the Chapter 11 Case.

### C.     Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

### D.     Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State

of Connecticut, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

## E.    *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

## F.    *Reference to the Debtor or the Reorganized Debtor*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtor or the Reorganized Debtor shall mean the Debtor and the Reorganized Debtor, as applicable, to the extent the context requires.

## G.    *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  The provisions of this Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; provided, however, that if there is determined to be any inconsistency between any provision of this Plan and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of this Plan.

# ARTICLE II.
# ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS
# AND STATUTORY FEES

In accordance with Bankruptcy Code § 1123(a)(1), Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Equity Interests set forth in Article III hereof.

## A.    *Administrative Claims*

Except with respect to Administrative Claims that are for Professional Fees and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Case or a holder of an Allowed Administrative Claim and the applicable Debtor(s) agree to less favorable treatment, each holder of an Allowed Administrative Claim shall be paid in full in Cash on the unpaid portion of its Allowed Administrative Claim on the latest of: (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date; (b) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed; and (c) the date such Allowed Administrative Claim becomes due and payable, or as soon thereafter as is reasonably practicable; provided that Allowed Administrative Claims that arise in the ordinary course of the Debtor's businesses shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions. Notwithstanding the

foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed by Final Order.

Except as otherwise provided in this Article II.A and except with respect to Administrative Claims that are for Professional Fees, requests for payment of Allowed Administrative Claims must be Filed and served on the Reorganized Debtor no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor or its property and such Administrative Claims shall be deemed discharged as of the Effective Date.

B.    *Accrued Professional Fees*

1.    Final Fee Applications for Professional Fees

All final requests for payment of Professional Fees incurred during the period from the Petition Date through the Effective Date other than for the Debtor's counsel shall be Filed no later than ninety (90) days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules and prior Court orders, the Allowed amounts of such Professional Fees shall be determined by the Court.  The amount of Professional Fees owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized Debtor.  The Debtor estimates that professional fees, including fees for the Debtor's investment advisor, may be approximately $900,000 to $1,000,000, but the actual number may vary and depend on litigation and the confirmation process.  The Debtor intends to use the proceeds from any recovery of the claim against Toy R Us, cash on hand and any refund or proceeds from any refund from a tax refund from the State of Massachusetts to pay allowed Professional Fees over a four year period in no less that equal monthly installments commencing within sixty days of the Effective Date.

2.    Estimation of Fees and Expenses

The Committee's Professionals shall estimate their Professional Fees before and as of the Confirmation Date and shall deliver such estimate to the Debtor no later than ten (10) days prior to the Effective Date (it being understood that it shall not be a condition precedent to the occurrence of the Effective Date that such estimates have been provided); provided, however, that such estimate shall not be considered an admission with respect to the fees and expenses of such Professional, and such Professionals are not bound to any extent by the estimates. If any of the Debtor's or the Committee's Professionals fail to provide an estimate or does not provide a timely estimate, the Debtor may estimate the unbilled fees and expenses of such Professional. The total amount so estimated shall be utilized by the Debtor to determine the Administrative Claims as of the Effective Date.

3.    Post-Confirmation Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtor shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Debtor.  Upon the Confirmation Date, any

requirement that Professionals comply with §§ 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Court.

C.    *Priority Tax Claims*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement release and discharge of each Allowed Priority Tax Claim, on the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Debtor or Reorganized Debtor: (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (2) Cash in an amount agreed to by such holder and the Debtor or Reorganized Debtor, as applicable; provided, however, that such parties may further agree for the payment of such Allowed Priority Tax Claim at a later date; or (3) at the option of the Debtor, Cash in an aggregate amount of such Allowed Priority Tax Claim payable in quarterly installment payments over a period not more than five years after the Petition Date, pursuant to § 1129(a)(9)(C) of the Bankruptcy Code.

D.    *Statutory Fees*

All fees due and payable pursuant to § 1930 of Title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtor.  On and after the Effective Date, the Reorganized Debtor shall pay any and all such fees when due and payable, and shall file with the Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.  The Debtor will remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of the Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

E. *CONSTELLATION NEWENERGY, INC. ("CNE")*

To the extent, not yet paid by the Effective Date, CNE will have an allowed administrative expense claim in the reduced amount of $150,000.00 (the "CNE Administrative Expense Claim") less any payments it received after February 1, 2019, the balance of which is to be paid as follows: $25,000.00 within seven (7) days after a Final Order enters approving a stipulation approving a settlement with CNE (or if no stipulation or order approving same has entered, the Effective Date, and beginning on the 1st or 15th day of the following month that is at least two-weeks from the date that the $25,000.00 payment set forth in this paragraph was made to CNE, the Debtor will pay CNE $10,416.66 twice per month (on the first and 15th) until the CNE Administrative Expense Claim is paid in full without interest in full satisfaction of the CNE Administrative Claim.  For avoidance of doubt, the Debtor is making only one payment of $25,000.00 toward the CNE Administrative Claim either before or after Confirmation.

F. *FUJIFILM NORTH AMERICA CORPORATION*

Fujifilm North America Corporation ("Fujifilm") shall have an Allowed Administrative Claim on the Effective Date in the amount of any sums which are due and payable as of the date thereof pursuant to that certain Adequate Protection Agreement (the "Fujifilm Adequate Protection

Agreement") approved by order of the Bankruptcy Court entered on August 7, 2018 [Docket No. 265]. For the avoidance of doubt, as of February 25, 2019 three monthly adequate protection payments totaling $22,000.00 remain due and payable plus a fourth payment is due by February 28, 2019 by the Debtor to Fujifilm pursuant to the Fujifilm Adequate Protection Agreement, which amounts constitute an Allowed Administrative Claim.

## ARTICLE III.
## DESIGNATION AND TREATMENT OF CLASSES OF CLAIMS AND CLASSES OF EQUITY INTERESTS

    *A.*    *Designation of and Specification of Impairment and Treatment of Classes of Claims and Classes of Equity Interests*

    All Claims and Equity Interests, other than Administrative Claims and Priority Tax Claims, are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant to this Plan and pursuant to §§ 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Equity Interest qualifies within the description of such other Classes. A Claim or Equity Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

    NOTWITHSTANDING ANYTHING IN THIS PLAN OR ELSEWHERE TO THE CONTRARY, THE DEBTOR SHALL HAVE THE OPTION TO PREPAY THE SECURED, PRIORITY OR ADMINISTRATIVE CLAIM OF ANY PARTY IN INTEREST WITHOUT PENALTY.

    1.    <u>Class 1—People's United Bank and Peoples Leasing Corp.</u>

    a.    *Classification*: Class 1 consists of People's United Bank's and Peoples Leasing Corp.'s (collectively "Peoples") Secured Claims against the Debtor.

    b.    *Impairment and Voting*: This Class is impaired under and is entitled to vote on the Plan.

    c.    *Treatment*:

    i.    <u>Allowance</u>: Peoples' Secured Claims shall be reduced to and Allowed in the amount of $3,675,000.00 in the aggregate and the balance of the Peoples' Secured Claims not allowed as part of its Allowed Secured Claim (after deducting $325,000 previously paid to Peoples pursuant to Court order from the proceeds of a federal tax refund) shall be allowed and treated as an Unsecured Claim. The Debtor will continue making adequate protection payments to Peoples Leasing Corp in accordance with the existing order entered by the Bankruptcy Court until the earlier of the Effective Date or the date the Allowed Secured Claims of Peoples has been satisfied

as set forth herein, subject to appropriate proration as of the date Peoples Allowed Secured Claims have been satisfied.

The allowance and treatment of the Secured Claims and Unsecured Claims of Peoples in the Plan shall be in full and final settlement of all claims that have been asserted against Peoples United Bank in Adversary Proceeding 18-2014, and, upon the Effective Date, Adversary Proceeding 18-2014 shall be dismissed with prejudice.

      ii.    <u>Liens</u>: Peoples shall retain its liens on its Collateral (other than in any refunds from the State of Massachusetts and any accounts receivable due from Toys R Us) to secure the Allowed Secured Claim of Peoples with the same validity, priority and extent as existed on the Petition Date.

      iii.    <u>Payment</u>: Unless paid sooner, Peoples' Allowed Secured Claim will be paid within one week of the Effective Date.  The Debtor anticipates paying off the Peoples' Secured Claim using the balance of the proceeds of its federal tax refund (approximately $325,000.00) and paying the balance from the proceeds of a refinancing of its assets and any cash infusion from the Debtor's principal. Presently, Kevin Armata ("Armata"), the Debtor's principal, has negotiated a letter of intent to borrow $150,000 to infuse into the Debtor if necessary, to help address any shortfall with Peoples. A copy of the letter of intent is available upon request prior to the deadline to object to confirmation of the Plan.  It is anticipated that Armata would sign a separate personal note or be responsible for a reduced deficiency to be agreed upon as part of any settlement with Peoples

      2.    <u>Class 2—Secured Claim of Connecticut Department of Economic and Community Development</u>

      a.    *Classification*:  Class 2 consists of the Secured Claim of Connecticut Department of Economic and Community Development ("DECD")

      b.    *Impairment and Voting*:  This Class is impaired under the Plan.

      c.    *Treatment*:

      i. Allowance:  The Secured Claim of the DECD shall be reduced to and Allowed in the amount of $269,651.02, and the balance of the Secured Claim shall be waived, disallowed and expunged as against the Debtor and Armata as of the Confirmation Date.

      ii.    Liens: The DECD shall retain its liens on its Collateral (other than in any refunds from the State of Massachusetts and any accounts receivable from Toys R US) to secure the Allowed Secured Claim of the DECD with the same validity, priority and extent as existed on the Petition Date, subordinated to the lien of any new lender that extends credit to the Debtor that helps satisfy the Allowed Secured Claim of Peoples.

      iii.    Payment: The Allowed Secured Claim of the DECD will be amortized and paid such that DECD receives $5,000.00 per month for first three months following the Effective Date, with the balance of the Allowed Secured Claim to be amortized and paid thereafter, with interest, as provided in the Assistance Agreement between the parties. Section 2.10(G) of the Assistance Agreement between the parties will remain enforceable, such that if the Debtor relocates its entire operation out of state, the

forgiveness credit in the amount of $1 million will be automatically added to Allowed Secured Claim of the DECD, together with a one-time penalty charge of 7.5% as set forth in the Assistance Agreement, all of which would be immediately due and payable upon relocation. DECD will also receive written guaranties of payment of its secured and unsecured claims from Armata and entities owned or controlled by Armata that previously guaranteed the DECD Allowed Secured Claims and Unsecured Claims.

3.   Class 3—Allowed Secured Claim of Fujifilm North America Corporation ("Fuji")

a.   *Classification*:  Class 3 consists of the Allowed Secured Claims of Fujifilm.

b.   *Impairment and Voting*:  This Class is impaired under the Plan.

c.   i. *Allowance:*  Fujifilm's Secured Claims shall be reduced to and Allowed in the total amount of $500,000.00.  The balances of Fujifilm's Secured Claims not allowed as part of its Allowed Secured Claim shall each be allowed and treated as Allowed Unsecured Claims.  The Allowed Secured Claims and Allowed Unsecured Claims of Fujifilm shall not be subject to further reduction, setoff, or dispute.

ii.   *Liens:* Fujifilm shall retain its liens on its Collateral (other than in any refunds from the State of Massachusetts and any accounts receivable from Toys R US) to secure the Allowed Secured Claims of Fujifilm with the same validity, priority and extent as existed on the Petition Date.  Notwithstanding anything in this Plan to the contrary, Fujifilm shall retain its first-priority liens on two Inca Onset printers and software, accessories, and equipment related thereto (the "Fujifilm Printer Collateral").  Fujifilm's interest in Collateral other than the Fujifilm Printer Collateral shall be subordinated to the lien of any new lender that extends credit to the Debtor that helps satisfy the Allowed Secured Claim of Peoples.

iii.   *Treatment:* The Allowed Secured Claims of Fujifilm will be amortized over thirty-six (36) months with no interest.  The Reorganized Debtor will pay to Fujifilm the sum of Thirteen Thousand Eight Hundred Eighty-Eight and 89/100 Dollars ($13,888.89) per month for thirty-six (36) months commencing sixty (60) days after the Effective Date in full satisfaction of its Secured Claims.  The Debtor or Reorganized Debtor shall continue to make adequate protection payments of $9,000 per month pursuant to the Fujifilm Adequate Protection Agreement until Fujifilm receives the first Plan payment provided for in this paragraph, which adequate protection payment shall be prorated for the month in which the Plan payments commence.  Except with respect to the $9,000 monthly adequate protection payments provided for in the preceding sentence, on the Effective Date the Fujifilm Adequate Protection Agreement shall terminate and the respective obligations of the Debtor and Fujifilm thereunder shall cease.  In the event of a default by the Reorganized Debtor on the Plan payments of Fujifilm's Allowed Secured Claims, which default remains uncured for fifteen (15) business days following receipt of written notice of default from Fujifilm, the Reorganized Debtor shall make the Fujifilm Printer Collateral available to Fujifilm upon request pursuant to Section 9-609(c) of the Uniform Commercial Code.

4.   Class 4—Secured Claim of Agfa, Corporation ("Agfa")

a.   *Classification*:  Class 4 consists of the Secured Claim of Agfa.

b.      *Impairment and Voting*:  This Class is impaired under and is entitled to vote on the Plan.

c.      *Treatment*: Agfa will retain its liens on the equipment securing the Secured Claim of Agfa.  Agfa has filed two proofs of claim, and the Debtor believes one claim is a duplicate and will object to at least one of the claims if not withdrawn.  On the Effective Date, (i) the Debtor will cure any default on the Class 4 Allowed Secured Claim by extending the term of the underlying Rebate agreement for a period of up to two (2) years so that Agfa can repay itself on the Allowed Secured Claim through rebates based on the underlying agreement of the parties.

5.      Class 5—Allowed Priority Non-Tax Claims

a.      *Classification*:  Class 5 consists of any and all unpaid Allowed Priority Non-Tax Claims against the Debtor.

b.      *Impairment and Voting*:  This Class is not impaired under and is conclusively presumed to have accepted the Plan, and the Debtor are not required to solicit acceptances from any holders of Claims in this Class.

c.      *Treatment*: On the later of the Effective Date and the date such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, each Entity holding an Allowed Priority Non-Tax Claim against will receive Cash equal to the Allowed amount of such Priority Non-Tax Claim, except to the extent that such holder of an Allowed Priority Non-Tax Claim has been paid by the Debtor prior to the Effective Date and except to the extent that such holder agrees to less favorable treatment.

6.      Class 6—Allowed Unsecured Claims Against the Debtor

a.      *Classification*:  Class 6 consists of Allowed Unsecured Claims against the Debtor.

b.      *Impairment and Voting*:  This Class is impaired under and is entitled to vote on the Plan.

c.      *Treatment*: Holders of Class 6 Claims shall receive, in full, complete and final satisfaction and release of their Allowed Unsecured Claims, the following:    Holders of Allowed Unsecured Claims in Class 6 shall receive their Pro Rata share of $ 53,571.42 paid each quarter for a total of twenty-eight (28) quarters commencing six months after the Effective Date of the Plan.  The Reorganized Debtor reserves the right to prepay any of these payments to each and/or all of these creditors in this class under the Plan without penalty at the discount rate of five percent (5%) per annum.  The Reorganized Debtor reserves the right to review and if it deems appropriate, to object, contest or otherwise challenge any claim that has not previously been allowed by Bankruptcy Court Order. The deadline to file such objection or challenge is thirty days after the Effective Date.  The total payout to holders of Allowed Unsecured Claims in Class 6 shall not exceed $1,500,000.00 in the aggregate and there shall be no interest that accrues on any distributions to Class 6 holders.

7.      Class 7—Equity Interests

a.   *Classification*:  Class 7 consists of Equity Interests in the Debtor.

b.   *Impairment and Voting*:  This Class is impaired under and is entitled to vote on the Plan.  The holder of this class is making substantial contributions toward confirmation, including but not limited to the waiver of a partial but substantial arrearage claim on the lease of the business property and if he is able to borrow funds to further the reorganization effort, the cash infusion into the Debtor in an amount that is presently contemplated to be approximately $150,000.00.

c.   *Treatment*: The holder of Equity Interests in the Debtor shall retain his Equity Interests.

C.   *Special Provision Governing Unimpaired Claims*

Nothing under the Plan shall affect the Debtor's rights in respect of any Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupment against any such Claims.

D.   *Confirmation Pursuant to § 1129(b) of the Bankruptcy Code*

The Debtor shall seek Confirmation of the Plan pursuant to § 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Equity Interests. The Debtor reserve the right to modify the Plan in accordance with Article X hereof to the extent, if any, that Confirmation pursuant to § 1129(b) of the Bankruptcy Code requires modification.

E.   *Elimination of Vacant Classes*

Any Class of Claims or Equity Interests that does not have a holder of an Allowed Claim or Allowed Equity Interest or a Claim or Equity Interest temporarily Allowed by the Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to § 1129(a)(8) of the Bankruptcy Code.

F.   *Settlement with DECD on Unsecured Claim*

The Debtor has provided the DECD with a job audit demonstrating that it is entitled to a forgiveness credit in the amount of $750,000 pursuant to the Assistance Agreement of the parties.  Accordingly, and notwithstanding the Unsecured Proof of Claim No. 39-2 by the DECD to the contrary, the Unsecured Claim of the DECD is reduced to and allowed in the amount of $750,000.00, the balance of which is waived, released and discharged as to the Debtor and Armata. The Allowed Unsecured Claim and the Allowed Secured Claim of the DECD are secured by a mortgage on the Premises leased by the Debtor from MRP.

MRP will pay the DECD (from lease payments it receives from the Debtor) equal to the difference between the quarterly plan payments DECD will receive from the Debtor and the

amount of the monthly payments that would be required under the Assistance Agreement between the parties on a reamortized debt in the amount of $750,000. The personal obligation of Armata and MRP will be documented by a promissory note from him or it to DECD.  Section 2.10(G) of the Assistance Agreement between the parties will remain enforceable, such that if the Debtor relocates its entire operation out of state, the forgiveness credit in the amount of $1 million will be automatically added to Allowed Secured Claim of the DECD, together with a one-time penalty charge of 7.5% as set forth in the Assistance Agreement, all of which would be immediately due and payable upon relocation.

DECD's mortgages on 100 Marketing Research Drive will be modified to correspond to the restated treatment of DECD's allowed Secured Claim and Allowed Unsecured Claim, with the understanding that the restated principal balance of the second mortgage will be comprised of the full amount of the reduced Secured Claim ($269,651.02) and the third mortgage restated and reduced to the full amount of the allowed Unsecured Claim ($750,000), subject to increase in the event of a relocation as set forth herein; and that the modified mortgages would retain their current priority position. Armata has agreed to reaffirm his existing personal guarantees of WMG's indebtedness to DECD, as modified, or execute new ones.

The allowance and treatment of the Secured Claims and Unsecured Claims of the DECD in this Plan shall be in full and final settlement of all claims that have been asserted against the DECD in Adversary Proceeding 18-2020 and upon the Effective Date, Adversary Proceeding 18-2020 shall be dismissed with prejudice.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Debtor's Actions*

On the Effective Date, or as soon thereafter as is reasonably practicable, all actions contemplated by the Plan shall be deemed authorized and approved by the Court in all respects, and the Reorganized Debtor shall be authorized and directed to take all actions as may be necessary or appropriate to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

B.    *Sources of Consideration for Plan Distributions*

Except as otherwise provided in the Plan or the Confirmation Order, all Cash necessary for the Reorganized Debtor to make payments required pursuant to the Plan will be obtained from the Reorganized Debtor's Cash balances, including Cash from operations, from financing or other capital investment to be obtained by the Debtor, and from net proceeds from the sale of any assets of the Reorganized Debtor and the remaining balance of an escrow account holding the proceeds of a federal tax refund subject to the lien of Peoples of approximately $325,000.00 (which is net of the remaining balance of a prior carveout to counsel to the Committee).  In particular, the Debtor anticipates refinancing or factoring its accounts receivable and equipment and giving the new lender a first priority lien on its assets.  In addition, the Debtor's principal may contribute up to

$150,000.00 on or around the Effective Date to the Debtor to further the rehabilitative effort. Cash payments to be made pursuant to the Plan will be made by the Reorganized Debtor.

C.    *Corporate Existence*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan, each Debtor shall continue to exist after the Effective Date as a separate legal entity, with all the powers of a corporation or limited liability company, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other analogous formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

D.    *Vesting of Assets in the Reorganized Debtor*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property of the Debtor's estate shall vest with the Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

E.    *Amendment of Existing Agreements and Other Corporate Actions By the Debtor*

On and after the Confirmation Date the Debtor shall take any and all other corporate actions necessary to effectuate the terms of the Plan. Each of the officers of the Debtor is authorized and directed to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

F.    *Directors and Officers of the Reorganized Debtor*

On the Effective Date, all managers, directors, and other members of the existing boards or governance bodies of the Debtor and officers of the Debtor, as applicable, shall remain in place.

G.    *Exemption from Certain Taxes and Fees*

Pursuant to § 1146(a) of the Bankruptcy Code, any transfers of property pursuant to this Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment. Such exemption under § 1146(a) of the

Bankruptcy Code specifically applies, without limitation, to (1) the creation of any mortgage, deed of trust, lien, or other security interest; (2) the making or assignment of any lease or sublease; (3) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation, or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with any transfer occurring under the Plan.

H.      *Preservation of Causes of Action*

In accordance with § 1123(b) of the Bankruptcy Code, but subject in all respects to Article IX hereof, and as otherwise may be set forth in the Plan, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtor may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtor.  No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Causes of Action against it as any indication that the Debtor or the Reorganized Debtor will not pursue any and all available Causes of Action against it.  The Debtor or the Reorganized Debtor, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Court order, the Debtor or Reorganized Debtor, as applicable, expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation of the Plan.  Except as expressly provided to the contrary in the Plan, including with respect to the settlement and release provisions set forth in Article IX, the Reorganized Debtor reserves and shall retain the Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or unexpired lease during the Chapter 11 Case or pursuant to the Plan.  In accordance with § 1123(b)(3) of the Bankruptcy Code, except as otherwise provided herein, any Causes of Action that the Debtor may hold against any Entity shall vest in the Reorganized Debtor. The Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Court.

I.      *Financing*

The Debtor intends to obtain financing to satisfy the Secured Claims of Peoples on or around the Effective Date.  This financing shall require the potential lender to obtain a first priority lien on all the Debtor's Assets (other than the Fujifilm Printer Collateral and certain equipment of Agfa), Avoidance Actions, any amount due from Toys R Us and any tax refund or related proceeds of a tax refund from the State of Massachusetts.  Entry of the Confirmation Order shall entitle any lenders that are willing to and actually provide financing to the Debtor in

18

an amount that is sufficient, when combined with other funds on hand, to satisfy the Allowed Secured Claims of Peoples Bank as set forth in the Plan  and the Court will enter such orders as are necessary to memorialize such first priority liens on those Assets superior to all other Liens held by any other lienholder.

J.      *Creditor Representative*

      a.      Appointment.  On or before the Confirmation Date, the Committee shall select an individual to act as the Creditor Representative.

      b.      Duties.  The Creditor Representative shall be authorized and empowered to (1) pursue the Debtor's compliance with the terms of the Plan in the event of a default after giving the Debtor twenty-one (21) business days to cure any default and (2) exercise the powers of the Debtor in connection with asserting any applicable Avoidance Actions against any insider of the Debtor.  In all circumstances, the Creditor Representative shall act in the best interests of the holders of Allowed Unsecured Claims.  The Creditor Representative or his/her agent shall maintain books and records containing an accounting of receipts and disbursements.

      c.      Compensation.  The Creditor Representative shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar roles, but any services associated with monitoring the Debtor's performance under the Plan and making distributions under the Plan shall not be borne by the Debtor, but come from and reduce the quarterly payments otherwise payable to the holders of Allowed Unsecured Claims in Class 6.

      d.      Resignation and Replacement.  The Creditor Representative may resign by giving written notice of resignation to the Debtor.  Within forty-five days of such resignation becoming effective, the Creditor Trustee shall provide a final accounting to the Debtor and thereupon be discharged from the performance of any further duties. The Creditor Representative may be removed for cause.

      e.      Conflicts.  If any claim, cause of action, objection, settlement or other act of, or on behalf of, the Debtor gives rise to a conflict on behalf of the Creditor Representative, the Creditor Representative shall inform the Debtor of the conflict not later than two (2) Business Days from discovery of the conflict by the Creditor Representative.  Immediately upon discovery of the conflict by the Creditor Representative, the Creditor Representative shall withdraw from any and all involvement concerning the matter or issue giving rise to the conflict.

      f.      Discharge.  After the earlier of the payment of Allowed Unsecured Claims pursuant to the Plan or all of its duties under the Plan have been fully performed, the Creditor Representative shall be discharged of his/her duties.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases*

      On the Effective Date, except as otherwise provided herein, all Executory Contracts or unexpired leases will be deemed assumed by the Reorganized Debtor in accordance with the

provisions and requirements of §§ 365 and 1123 of the Bankruptcy Code, other than: (1) those that are identified on a schedule of rejected Executory Contracts and unexpired leases filed with the Bankruptcy Court within thirty (30) days of the Effective Date; (2) those that have been previously rejected by a Final Order; (3) those that are the subject of a motion to reject Executory Contracts or unexpired leases that is pending on the Confirmation Date; or (4) those that are subject to a motion to reject an Executory Contract or unexpired lease pursuant to which the requested effective date of such rejection is after the Effective Date.  Entry of the Confirmation Order shall constitute a Court order approving the assumptions or rejections of such Executory Contracts and unexpired leases as set forth in the Plan or the Schedule of Rejected Executory Contracts and unexpired leases, pursuant to §§ 365(a) and 1123 of the Bankruptcy Code.  Unless otherwise indicated, assumptions or rejections of Executory Contracts and unexpired leases pursuant to the Plan are effective as of the Effective Date.  Each Executory Contract or unexpired lease assumed pursuant to the Plan or by Court order shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Court authorizing and providing for its assumption under applicable federal law.  Any motions to assume Executory Contracts or unexpired leases pending on the Effective Date shall be subject to approval by a Final Order of the Court on or after the Effective Date.  To the maximum extent permitted by law, to the extent any provision in any Executory Contract or unexpired lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or unexpired lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or unexpired lease or to exercise any other default-related rights with respect thereto.

Assumption of Lease:  The Debtor's principal place of business is located at property commonly referred to as 100 Marketing Drive, Suffield CT (the "Premises"). The Debtor is the tenant under a lease of the Premises dated April 28, 2005, as amended by Amendment to Lease dated January 8, 2009, Amendment to Lease dated March 10, 2015, and Amendment to Lease dated March 29, 2016, Amendment to Lease dated April 1, 2016 (collectively, the "Lease") from Marketing Research Park, LLC (the "Landlord" or "MRP"), an entity which is owned by the principal of the Debtor. The Debtor obtained a Brokers Letter Opinion ("BLO") from Amodio & Co. Real Estate dated December 28, 2018 to aid the Debtor in estimating the fair market rent of the Premises.  While not an appraisal, the BLO provided a recent analysis of similarly leased property and an estimate of the fair market value rent for the Premises.  It noted that that the gross rent on an annual basis would be between $1,734,300 and $1,830,650, with the highest value being for a user similar to the Debtor.  Using an average value, that equates to approximately $148,5540.00 per month, and, $152,554.00 per month would be the rent for use similar to the Debtor.  The Debtor has negotiated a reduced rental obligation for the Premises of $120,000.00 per month inclusive of real estate taxes beginning in May 2019.  During the course of the bankruptcy case, the Debtor negotiated an arrangement wherein it paid less than the monthly rent due under the lease (approximately $130,000 per month) to further the reorganization effort, but the Debtor still was responsible for the balance.  In some months the Debtor did not make sufficient rent payments to MRP or its agent Armata Realty. LLC as a result of cash flow.  As a result, the Debtor owes postpetition rent arrears that are in excess of $360,000.00 as of mid-February 2019.   It is estimated that First Suffield Bank fka First National

Bank of Suffield a division of PeoplesBank ("FSB") is owed approximately $230,000.00 to $280,000.00 in delinquent mortgage payments, fees and expenses. MRP and its agent, Armata Realty LLC, will waive any distribution from the Debtor on the rent arrearage owed under the Lease prior to the Confirmation Date except for amounts sufficient to satisfy FSB for any arrearage that is owed to FSB. An agreement has been reached to pay any outstanding arrearage owed to FSB in equal monthly installments over a six-month period commencing in May 2019 and to the extent if becomes due, the DECD, the total of which shall be deemed the cure amount the Debtor must pay to reinstate the Lease.

Upon the Effective Date, the Debtor shall be deemed to have assumed the Lease with MRP as modified as set forth above and as follows:

The monthly base rent shall be reduced to one hundred twenty thousand dollars ($120,000.00) and the arrearage that the Debtor must cure is an amount sufficient to address the outstanding arrearage owed to First National Bank of Suffield nka PeoplesBank.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or unexpired leases, if any, must be filed with the Court within thirty (30) days after the date of entry of an order of the Court (including the Confirmation Order) approving such rejection. Any Claims arising from the rejection of an Executory Contract or unexpired lease not Filed within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtor, the Reorganized Debtor, the Estate, or property of the foregoing parties, without the need for any objection by the Debtor or the Reorganized Debtor, as applicable, or further notice to, or action, order, or approval of the Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or unexpired lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. Claims arising from the rejection of the Debtor' Executory Contracts or unexpired leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III.A.12 of the Plan, as applicable.

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any monetary defaults under an Executory Contract or unexpired lease, as reflected on the Cure Notice shall be satisfied, pursuant to § 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or unexpired leases may otherwise agree. In the event of a dispute regarding (1) the amount of any payments to cure such a default; (2) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of § 365 of the Bankruptcy Code) under the Executory Contract or unexpired lease to be assumed; or (3) any other matter pertaining to assumption, the cure payments required by § 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. At least 14 days before the Confirmation Hearing, the Debtor shall distribute, or cause to be distributed, Cure Notices of proposed assumption and proposed amounts of Cure Claims to the applicable third

21

parties.  Any objection by a counterparty to an Executory Contract or unexpired lease to a proposed assumption or related cure amount must be Filed, served and actually received by the Debtor at least seven (7) days before the Confirmation Hearing.  Any counterparty to an Executory Contract or unexpired lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or cure amount. Notwithstanding anything herein to the contrary, in the event that any Executory Contract or unexpired lease is removed from the Schedule of Rejected Executory Contracts and unexpired leases after such 14-day deadline, a Cure Notice of proposed assumption and proposed amounts of Cure Claims with respect to such Executory Contract or unexpired lease will be sent promptly to the counterparty thereof and a noticed hearing set to consider whether such Executory Contract or unexpired lease can be assumed. In any case, if the Court determines that the Allowed Cure Claim with respect to any Executory Contract or unexpired lease is greater than the amount set forth in the applicable Cure Notice, the Debtor or Reorganized Debtor, as applicable, will have the right to add such Executory Contract or Unexpired lease to the Schedule of Rejected Executory Contracts and unexpired leases, in which case such Executory Contract or unexpired lease will be deemed rejected as the Effective Date.  Assumption of any Executory Contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or unexpired lease at any time before the date that the Debtor assume such Executory Contract or unexpired lease. Any Proofs of Claim Filed with respect to an Executory Contract or unexpired lease that has been assumed shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Court.

D.     *Preexisting Obligations to the Debtor Under Executory Contracts and Unexpired leases*

The Debtor reserve its right to assert that rejection or repudiation of any Executory Contract or unexpired lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtor under such contracts or leases.  Notwithstanding any non-bankruptcy law to the contrary, the Debtor expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased, or services previously received, by the contracting Debtor from counterparties to rejected or repudiated Executory Contracts or unexpired leases.

E.     *Insurance Policies*

All of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan.  On the Effective Date, the Debtor shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments related thereto.

F.     *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or unexpired lease that is assumed shall include all modifications, amendments, supplements, restatements, or other

agreements that in any manner affect such Executory Contract or unexpired lease, and Executory Contracts and unexpired leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and unexpired leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

G.    *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or unexpired lease on the Schedule of Rejected Executory Contracts and unexpired leases, nor anything contained in the Plan, shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or unexpired lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor, or, after the Effective Date, the Reorganized Debtor shall have thirty (30) days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease.

H.    *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting unexpired leases pursuant to § 365(d)(4) of the Bankruptcy Code.

## ARTICLE VI.

## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Distributions – Generally*

The Reorganized Debtor will make all distributions required by the Plan.

B.    *Distributions of Cash*

Any payment of Cash made by Reorganized Debtor pursuant to the Plan may be made at the option of such party either by check drawn on a domestic bank or by wire transfer from a domestic bank.

C.    *Distributions Free and Clear*

Except as otherwise provided herein, any distributions or transfers by or on behalf of the Debtor under the Plan, including, but not limited to, distributions to any holder of an Allowed Claim, shall be free and clear of any liens, claims, and encumbrances, and no other entity shall have any interest — legal, beneficial, or otherwise — in assets transferred pursuant to the Plan.

D.    *Timing of Distributions*

Unless otherwise provided herein, any distribution to be made by the Reorganized Debtor shall be made at the time provided in Article II or Article III of this Plan. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### E.    Delivery of Distributions

Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtor or its agents. The holder must notify the Reorganized Debtor in writing of a change of address or, in the case of holders of transferred Claims only, by the filing of a proof of claim or statement pursuant to Bankruptcy Rule 3001(e) by such holder or transferee that contains an address for such holder different than the address of such holder as set forth in the Schedules. The Reorganized Debtor shall not be liable for any distribution sent to the address of record of a holder in the absence of the written change thereof as provided herein.

### F.    Undeliverable and Unclaimed Distributions

If any Claim holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the holder notifies the Reorganized Debtor, as appropriate, in writing of such holder's then-current address, at which time all missed distributions shall, subject to the final sentence of this paragraph, be made as soon as is practicable to such holder, without interest.  Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not negotiated within one hundred and sixty (60) days after the date of issuance thereof. After such date, all such distributions shall be deemed unclaimed property under § 347(b) of the Bankruptcy Code and shall become unencumbered Cash of the Reorganized Debtor.

### G.    Setoffs

To the extent permitted under applicable law, the Reorganized Debtor may set off against or recoup from any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), the claims, rights and causes of action of any nature that one of the Debtor has asserted in writing against the holder of such Allowed Claim, including, without limitation, any rights under § 502(d) of the Bankruptcy Code, and in the absence of a written objection by such holder of an Allowed Claim within thirty (30) days of the delivery of such a writing from such Debtor, it will be conclusively presumed that the requirements for disallowance of a Claim under § 502(d) of the Bankruptcy Code or setoff or recoupment under applicable law have been satisfied. Neither the failure to affect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by a Debtor of any such claims, rights and causes of action that such Debtor may possess against such holder.

### H.    Application of Distributions

Distributions to any holder of an Allowed Claim shall be applied first to the satisfaction of the principal portion (as determined for federal income tax purposes) of any such Claim and thereafter to the remaining portion of such Allowed Claim, if any.

24

I.      *Withholding and Reporting Requirements*

In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Debtor, as applicable, shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit on account of such distribution, including withholding tax obligations in respect of in-kind (non-Cash) distributions. Any party issuing any instrument or making an in-kind (non-Cash) distribution under the Plan has the right, but not the obligation, to refrain from making a distribution until the holder of the Allowed Claim, for which such distribution is to be made, has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

## ARTICLE VII.

## PROCEDURES FOR RESOLVING CONTINGENT,

## UNLIQUIDATED, AND DISPUTED CLAIMS

A.      *No Distributions Pending Allowance*

Notwithstanding any other provision herein, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on any portion of that Claim unless and until and only to the extent such Claim becomes Allowed.

B.      *Resolution of Disputed Claims*

1.      Reorganized Debtor shall have the right to make, file and prosecute objections to Claims. A copy of each objection shall be served upon the holder of the Claim to which the objection is made as soon as practicable (unless such Claim was already the subject of a valid objection by the Debtor), but in no event shall the service of such an objection be later than six (6) months after the Effective Date, unless such date is extended by order of the Bankruptcy Court. All objections shall be litigated to a Final Order except to the extent such objection is withdrawn, or such objection is compromised, settled or otherwise resolved.

2.      Reorganized Debtor will reserve sufficient Cash for Disputed Claims.

3.      The Debtor may, at any time, request the Bankruptcy Court to estimate any Claim pursuant to § 502(c) of the Bankruptcy Code, regardless of whether that Debtor previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim, at any time, including during litigation concerning any objection to such Claim.  In the event the Bankruptcy Court estimates any Disputed Claim, that estimated amount may constitute either the Allowed amount of such Claim or a maximum limitation on the Allowed amount of such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the Allowed amount of such Claim, a Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

4.      If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Reorganized Debtor, as soon as practicable following the date on which the Disputed Claim becomes an Allowed Claim, except as otherwise provided herein, distribute to the holder of such Allowed Claim an amount that provides such holder with the same percentage recovery, as of such date, as other holders of Claims in the relevant Class that were Allowed on the Effective Date.

5.      To the extent that a Disputed Claim is expunged or reduced, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is disallowed but rather such distribution amount shall be paid to the other Creditors on a Pro Rata basis in accordance with the terms of the Plan.

## VIII.
## CONDITIONS PRECEDENT TO
## CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to Consummation*

Consummation of the Plan shall occur on the Business Day as determined by the Debtor after they reasonably determine that the following conditions have been met or waived:

1.      The Bankruptcy Court has entered the Confirmation Order and it is a Final Order, and such order is in form and substance acceptable to the Debtor.

2.      All actions, documents, certificates and agreements necessary to implement this Plan have been affected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws.

3.      All documents and agreements necessary to implement the Plan, have (a) been tendered for delivery and/or (b) been effectuated or executed, as applicable.

4.      All governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions provided for in this Plan have been obtained, are not subject to unfulfilled conditions, and are in full force and effect, and all applicable waiting periods have expired without any action having been taken by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions.

5.      All statutory fees and obligations then due and payable to the Office of the United States Trustee shall have been paid and satisfied in full.

6.      Consummation of a sale or refinance of the Debtor's assets in an amount, together or other Cash on hand, necessary to satisfy the Allowed Secured Claims of Peoples.

B.      *Waiver of Conditions*

The conditions to Consummation of the Plan set forth in this Article, other than the condition that the Bankruptcy Court has entered a Confirmation Order in form and substance acceptable to the Debtor, may be waived, in whole or in part, by the Debtor, in each case without

further notice, leave, hearing or order of the Bankruptcy Court or any formal action and, thereupon, Consummation may occur.

C.       *Effect of Non-Occurrence of Conditions to Consummation*

If prior to Consummation of the Plan, the Confirmation Order is vacated pursuant to a Final Order, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan, assumption or rejection of Executory Contracts or unexpired leases effected by this Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other Entity, or Causes of Action; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other Entity.

# ARTICLE IX.
## SETTLEMENT, RELEASES,
## INJUNCTION AND RELATED PROVISIONS

A.       *Discharge, Compromise and Settlement*

Except as expressly provided in the Plan or the Confirmation Order, all distributions and rights afforded under the Plan and the treatment of Claims and Equity Interests under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims and any other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities of any nature whatsoever, and of all Equity Interests, or other rights of a holder of an Equity Interest, relating to any of the Debtor or the Reorganized Debtor or any of its respective assets, property and Estate, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities, or Equity Interests or other rights of a holder of an Equity Interest or other ownership interest, and upon the Effective Date, the Debtor and the Reorganized Debtor shall (i) be deemed to have received a discharge under § 1141(d)(1)(A) of the Bankruptcy Code and release from any and all Claims and any other obligations, suits, judgment s, damages, debts, rights, remedies, Causes of Action or liabilities, and any Equity Interests or other rights of a holder of an Equity Security or other ownership interest, of any nature whatsoever, including, without limitation, liabilities that arose before the Effective Date (including prior to the Petition Date), and all debts of the kind specified in §§ 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based upon such debt is filed or deemed filed under § 501 of the Bankruptcy Code, (b) a Claim based upon such debt is Allowed under § 502 of the Bankruptcy Code (or is otherwise resolved), or (c) the holder of a Claim based upon such debt

voted to accept the Plan and (ii) terminate and cancel all rights of any Equity Security holder in any of the Debtor and all Equity Interests.

Except as expressly provided in the Plan or the Confirmation Order, all Persons shall be precluded from asserting against the Debtor, the Debtor's respective assets, property and Estate and the Reorganized Debtor any other or further Claims, or any other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities of any nature whatsoever, and all Equity Interests or other rights of a holder of an Equity Interest, relating to the Debtor or Reorganized Debtor or any of its respective assets, property and Estate based upon any act, omission, transaction or other activity of any nature that occurred prior to the Effective Date. In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge of all such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities, and any Equity Interests or other rights of a holder of an Equity Interest and termination of all rights of any such holder in any of the Debtor, pursuant to §§ 524 and 1141 of the Bankruptcy Code, and such discharge shall void and extinguish any judgment obtained against the Debtor, the Reorganized Debtor or any of its respective assets, property and Estate at any time, to the extent such judgment is related to a discharged Claim, debt or liability or terminated right of any holder of any Equity Interest in any of the Debtor or terminated Equity Interest.

B.    *Exculpation*

Except as otherwise provided in the Plan or the Confirmation Order, the Exculpated Parties, or any direct or indirect predecessor in interest to any of the foregoing persons, shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, or confirmation of the Plan, the Disclosure Statement, any Plan document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Case, in each case for the period on and after the Petition Date and through the Effective Date; provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from the fraud, willful misconduct, gross negligence or legal or accounting malpractice of any such party. The rights granted hereunder are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Exculpated Parties have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law. In furtherance of the foregoing, the Exculpated Parties shall have the fullest protection afforded under § 1125(e) of the Bankruptcy Code and all applicable law from liability for violation of any applicable law, rule or regulation governing the solicitation of acceptance or rejection of a plan. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation.

C.    *Release of Indemnified Entities*

In consideration of, *inter alia* and as applicable, their crucial assistance with respect to the Debtor's reorganization, their continued service during the pendency of these Case, and in light of the Debtor's obligations of indemnification and contribution with respect to such

Entities, the Debtor and its Estate and all holders of Claims and Equity Interests that (i) voted to accept the Plan or (ii) were deemed to accept the Plan (collectively, the "Indemnified Entities Releasors" and each individually an "Indemnified Entities Releasor"), hereby unconditionally release, remise and forever discharge the Debtor's Related Persons and their respective shareholders, directors, officers, subsidiaries and affiliates, successors and assigns, in their respective capacities as such (collectively, the "Indemnified Entities Released Parties" and each individually an "Indemnified Entities Released Party"), from any and all manner of actions, Causes of Action, suits, debts, accounts and claims, provided, however, that the release contemplated by this section shall not be effective: (i) unless the action, Cause of Action, suit, debt, account or claim would create obligations of indemnification or contribution with respect to the Debtor, its Estate, or the Reorganized Debtor; (ii) with respect to actions, Causes of Action, suits, debts, accounts and claims that arise after the Effective Date; (iii) with respect to claims or obligations created under this Plan; and (iv) to the extent that such action, Cause of Action, suit, debt, account or claim arose out of or related to any act or omission of the Indemnified Entities Released Party that constituted fraud, gross negligence, bad faith, willful misconduct or legal or accounting malpractice as determined by Final Order of a court of competent jurisdiction. Nothing contained herein shall release a party from an Avoidance Action.

D.    *Injunctions*

1.    Confirmation Date Injunction

ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CASE UNDER § 105 OR 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, WILL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.

2.    Effective Date Injunctions

a.    *Injunction Against All Entities*

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY SUIT, ACTION OR OTHER PROCEEDING, OR CREATING, PERFECTING OR ENFORCING ANY LIEN OF ANY KIND, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, EXCULPATED OR TO BE EXCULPATED, DISCHARGED OR TO BE DISCHARGED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.  BY ACCEPTING DISTRIBUTIONS PURSUANT TO THE PLAN, EACH HOLDER OF AN ALLOWED CLAIM OR EQUITY INTEREST WILL BE DEEMED TO HAVE SPECIFICALLY CONFIRMED ITS CONSENT TO THIS INJUNCTION.

b.    *Injunction Against Holders of Released, Discharged or Exculpated Claims*

Except as otherwise provided herein or for obligations issued pursuant hereto, all Persons that have held, hold, or may hold Claims or Equity Interests that, pursuant to this Plan, have been released, discharged or are subject to exculpation, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, the Exculpated Parties, or the Indemnified Entities Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Equity Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estate of such Entities on account of or in connection with or with respect to any such Claims or Equity Interests; (d) asserting any right of setoff (except for setoffs asserted prior to the Petition Date), subrogation, or of any kind against any obligation due from such Entities or against the property or Estate of such Entities on account of or in connection with or with respect to any such Claims or Equity Interests; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests released, exculpated, or settled pursuant to the Plan.

E.      *Protection against Discriminatory Treatment*

In accordance with § 525 of the Bankruptcy Code, of the United States Constitution, no Governmental Unit shall discriminate against any Reorganized Debtor, or any Entity with which a Reorganized Debtor has been or is associated, solely because such Reorganized Debtor was a Debtor under chapter 11, may have been insolvent before the commencement of the Case (or during the Case but before such Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Case.

# ARTICLE X.
# MODIFICATION, REVOCATION,
# OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments*

Subject to the limitations contained herein, the Debtor reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in Bankruptcy Code § 1127 and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtor expressly reserve its rights to alter, amend, or modify materially the Plan with respect to the Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.      *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan made prior to Confirmation are approved pursuant to § 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of the Plan*

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan, or if Confirmation and Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Equity Interest or Class of Claims or Equity Interests), assumption or rejection of Executory Contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims or Equity Interests; (ii) prejudice in any manner the rights of the Debtor or any other Entity, including the holders of Claims or Equity Interests; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Pursuant to Bankruptcy Code §§ 105(c) and 1142 and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Case and all Entities with respect to all matters related to the Case, the Debtor and this Plan as legally permissible, including, without limitation, jurisdiction to:

A.      grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date;

B.      resolve any issues related to any matters adjudicated in the Chapter 11 Case;

C.      hear, decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Reorganized Debtor after the Effective Date, provided that the Reorganized Debtor shall reserve the right to commence actions in all appropriate forums and jurisdictions;

D.      enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with this Plan or the Disclosure Statement;

E.      resolve any case, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

F.      issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of this Plan, except as otherwise provided in this Plan;

G.      enforce the terms and condition of this Plan and the Confirmation Order;

H.      resolve any case, controversies, suits or disputes with respect to the release, exculpation, indemnification and other provisions contained in ARTICLE VIII hereof and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

I.      hear and determine the Avoidance Actions;

J.      enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

K.      resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with this Plan or the Disclosure Statement; and

L.      enter an order concluding or closing the Chapter 11 Case.

All of the foregoing applies following the Effective Date; provided, that from the Confirmation Date through the Effective Date, in addition to the foregoing, the Bankruptcy Court shall retain jurisdiction with respect to all other matters of this Plan that were subject to its jurisdiction prior to the Confirmation Date; provided, further, that the Bankruptcy Court shall not have nor retain exclusive jurisdiction over any post-Effective Date agreement.  Nothing contained herein shall be construed to increase, decrease or otherwise modify the independence, sovereignty or jurisdiction of the Bankruptcy Court.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

A.      *Dissolution of the Committee*

On the later of the (1) Effective Date or (2) the date all objections to Claims pending on the Confirmation Date have been adjudicated by Final Order, the Committee shall dissolve automatically, provided, however, that following the Effective Date, the Committee shall continue to have standing and a right to be heard with respect to (i) Claims and/or applications for compensation by Professionals and (ii) any appeals of the Confirmation Order that remain pending as of the Effective Date to which the Creditors' Committee is a party.  Upon dissolution of the Committee, all current and former members of the Committee and their respective officers, employees, counsel, advisors, and agents, shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Case, and the retention or employment of the Committee's attorneys, accountants, and other agents shall terminate, except as otherwise provided in this Plan.

B.    *Substantial Consummation*

On the Effective Date, the Plan shall be deemed to be substantially consummated under Bankruptcy Code §§ 1101 and 1127(b).

C.    *Payment of Statutory Fees*

All outstanding fees payable pursuant to 28 U.S.C. § 1930 shall be paid on the Effective Date. All such fees payable after the Effective Date shall be paid prior to the closing of the Chapter 11 Case when due or as soon thereafter as practicable.

D.    *Entire Agreement*

Except as otherwise described herein, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

E.    *Closing of Chapter 11 Case*

The Reorganized Debtor will within one hundred twenty (120) days after the Effective Date, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

F.    *Successors and Assigns*

This Plan shall be binding upon and inure to the benefit of the Debtor and its respective successors and assigns, including, without limitation, the Reorganized Debtor. The rights, benefits, and obligations of any Person or Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

G.    *Reservation of Rights*

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and this Plan is Consummated. Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Debtor or any other Entity with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtor with respect to the holders of Claims or Equity Interests or other Entity; or (2) any holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

Neither the exclusion or inclusion by the Debtor of any contract or lease on any exhibit, schedule, or other annex to this Plan, nor anything contained in this Plan, will constitute an admission by the Debtor that any such contract or lease is or is not an Executory Contract or unexpired lease or that the Debtor or the Reorganized Debtor or its respective Affiliates has any liability thereunder.

Except as explicitly provided in this Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, Avoidance Actions, or other rights of the Debtor or the Reorganized Debtor under any executory or non-executory contract or unexpired or expired lease.

Nothing in this Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtor or the Reorganized Debtor, as applicable, under any executory or non-executory contract or unexpired or expired lease.

If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of its assumption under this Plan, the Debtor or Reorganized Debtor, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease.

H.    *Severability*

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

I.    *Service of Documents*

All notices, requests, and demands to or upon the Debtor or the Reorganized Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Windsor Marketing Group, Inc.
Attention: Kevin Armata, CEO
100 Marketing Way
Suffield, Ct 06078

**With copies to:**

Zeisler & Zeisler, P.C.
Attn: Matthew K. Beatman, Esq.
10 Middle St.
15th Floor
Bridgeport, CT 06604

J.      *Plan Exhibits and Schedules*

All exhibits and schedules to this Plan are incorporated and are a part of this Plan as if set forth in full herein.

**[THE BALANCE OF THIS PAGE WAS INTENTIONALLY LEFT BLANK]**

Dated this 25th day of February, 2019.

Respectfully submitted,

WINDSOR MARKETING GROUP, INC.

By: _____

Kevin Armata

Its:    President

Attorneys for the Debtor:

Matthew K. Beatman, Esq.
ZEISLER & ZEISLER, P.C.
10 Middle Street
Bridgeport, CT 06604
Telephone 203.368.4234